# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALPHONSO WHIPPER, | : | 3:25-CV-733 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| VEREEN, et al., | : | January 21, 2026 |
| *Defendants*. | : | |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Alphonso Whipper, a sentenced inmate currently incarcerated at MacDougall Walker Correctional Institution ("MacDougall C.I.") in the custody of the Connecticut Department of Correction ("DOC"),[1] filed this civil rights complaint under 42 U.S.C. § 1983. Compl., ECF No. 1. He names as Defendants four DOC employees who work at MacDougall C.I.: Counselor Supervisor Vereen; Counselor Bennett; Correctional Enterprise Supervisor Tulloch; and Deputy Warden Mangiafico. Plaintiff claims that Defendants retaliated and conspired to retaliate against him for his constitutionally protected speech and conduct by refusing to place him in an industry job, placing a false narrative on an official document in his file, and transferring him to a "chaotic block" within the prison. He seeks injunctive relief and compensatory and punitive damages.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). The publicly available DOC website shows that Plaintiff was sentenced on May 11, 1998, to a sixty-year term of imprisonment. *See* DOC Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=245195 (last visited January 21, 2026).

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

§§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted

an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as

follows.

## I.    FACTUAL BACKGROUND

### A.    Plaintiff's Ongoing Lawsuit in Case No. 23-CV-27 (SVN)

Plaintiff was transferred from Cheshire Correctional Institution ("Cheshire C.I.") to

MacDougall C.I. in the Spring of 2023. ECF No. 1 ¶¶ 2, 11. For background and of relevance to

the allegations in this case, Plaintiff has an ongoing lawsuit in this Court, which he brought on

January 9, 2023, prior to his transfer to MacDougall C.I. *Id.* (referencing *Whipper v. Green*, No.

23-CV-27-SVN (D. Conn. Jan. 9, 2023), ECF No. 1) ("*Whipper I*"). The lawsuit alleges that DOC

prison officials, including several who were employed at Cheshire C.I., retaliated against Plaintiff

by removing him from a collegiate prison education program and transferring him to MacDougall

C.I. after he engaged in constitutionally protected speech, in violation of the First Amendment.

*See id.*, Initial Review Order, *Whipper I*, ECF No. 21.

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

B.  Claims & Allegations in the Complaint

The following allegations are set forth in the complaint in this action.  The Court does not include herein all the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.  Relatedly, the Court treats the facts alleged in the complaint as true for purposes of initial review.

As noted, Plaintiff arrived at MacDougall C.I. in the Spring of 2023.  ECF No. 1 ¶ 11.  When Plaintiff arrived at MacDougall C.I., he "confirmed with the administration that he would be going to the Correctional Enterprise ('Industry') for employment," upon the belief that his placement in the Industry was prearranged prior to his transfer.[3]  *Id*. ¶ 12.  Plaintiff was informed, however, that there were no current openings, and he would have to wait.  *Id*. ¶ 13.  In the interim, he was "offered a t[ie]r-man job to . . . aid his move from an orientation block to a more functional block."[4]  *Id*.  Plaintiff alleges he earned $28.00 per month as a tier-man and roughly $30.00 per week as an Industry worker.  *Id*. ¶ 14.

Plaintiff was placed in block M-2, and "after witnessing an utter contempt for authority by the prisoners of that block, [he] requested and was granted a move to a more docile block, L-1."  *Id*. ¶ 15.  Plaintiff "immediately spoke with Defendant [Counselor Supervisor] Vereen about his interest and intention to go to the Industry block, J-2, for employment."  *Id*. ¶ 16.  Defendant

---

[3] The Court takes judicial notice of various Administrative Directives promulgated by the Connecticut Department of Correction ("DOC") to give context to Plaintiff's allegations.  *See Chambers v. Johnpierre*, No. 3:14-CV-1802 (VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016); *Nicholson v. Murphy*, No. 3:02-CV-1815 (MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003) (taking judicial notice of DOC's Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities").  Under Administrative Directive ("A.D.") 10.20, the DOC, through its Correctional Enterprises Unit Program, provides "qualified inmates structured, simulated employment and work training program opportunities to aid in community reintegration upon their release." A.D. 10.20, https://portal.ct.gov/doc/ad/ad-chapter-10 (last visited January 21, 2026).

[4] Under DOC's Administrative Directive 10.1, Inmate Assignment and Pay Plan, "each Unit Administrator shall develop an Annual Pay Plan for all non-industries work, education and Tier IV program assignments within the facility." A.D. 10.1(4)(B).

Vereen confirmed that there were no openings for an Industry job, and she instead offered Plaintiff

the tier-man job until there was an Industry job opening.  *Id*.

Next, in June of 2023, Plaintiff was sent a notice to appear for an "Orientation for

Asnuntuk, a college program at MacDougall."  *Id*. ¶ 17.  Plaintiff claims he was included in this

program without his knowledge or consent, so he "approached Defendant Vereen to discover

who[] would interfere with [his] private academic life."  *Id*. ¶ 18.  At the same time, Plaintiff was

in the process of preparing for an injunction hearing in *Whipper I*, where he was seeking to be

"returned to complete his senior project at Wesleyan's Center for Prison Education, which is

located at Cheshire C.I."  *Id*.  Defendant Vereen told Plaintiff that she did not know "who had the

power to include [him in the Asnuntuck program] without his knowledge or consent."  *Id*. ¶ 19.

Yet Plaintiff alleges that Defendant Vereen, as Unit Manager, was "responsible for knowing and

being involved in any classification decisions or changes to his life."  *Id*.

Subsequently, Plaintiff told Defendant Deputy Warden Mangiafico that he was not

permitted to join the programs he wanted and was not being sent to the "Industry block."  *Id*. ¶ 20.

Defendant Mangiafico allegedly responded, "This is prison. Get used to it."  *Id*.  Plaintiff claims

that during the approximately two years he had been at MacDougall, he "witnessed Defendant

Mangiafico facilitate the movement of two prisoners that also came to MacDougall C.I."  *Id*. ¶ 21.

Plaintiff alleges that one of the prisoners was transferred "on the basis of a separation profile,

which was the same mechanism used to justify [his] transfer [to MacDougall C.I.]."  *Id*.  However,

unlike Plaintiff, this prisoner "had the profile remedied and he was sent back to Cheshire C.I."  *Id*.

Plaintiff claims that the other prisoner who was transferred to MacDougall C.I. from Cheshire C.I.

was admitted into a "highly privileged program."  *Id*.

In the spring of 2024, an injunction hearing was held in *Whipper I*, based on Plaintiff's

request to return to Cheshire C.I.  *Id*. ¶ 22.  The day after the injunction hearing, Plaintiff was summoned to Defendant Counselor Bennett's office where he was informed that a separation profile in place for him could be removed, but Defendant Bennett "would not disclose who was behind the effort."  *Id*. ¶ 23.  Plaintiff then filled out a form provided by Defendant Bennett, and the following week, he "filed a grievance over the lack of transparency."  *Id*. ¶ 24.  After Plaintiff's grievance began to circulate, Defendants Vereen and Bennett became "notably short with Plaintiff."  *Id*. ¶ 25.

Next, Plaintiff alleges that in the fall of 2024, while he was passing out meal trays, "an older prisoner who is favored by Defendants Vereen and Mangiafico struck Plaintiff in the chest after not being given an extra tray upon demand."  *Id*. ¶ 26.  Approximately one week later, the older prisoner was taken to solitary confinement over the incident.  *Id*. ¶ 27.  During that time, Plaintiff learned that Defendant Vereen would be leaving L-1 and taking a position as a Classification Facilitator for MacDougall C.I.  *Id*. ¶ 28.

On Defendant Vereen's last day as Unit Manager for L-1, she summoned Plaintiff to Defendant Bennett's office, where Plaintiff was informed he would be getting what Defendants described as a "helper" for his tier-man job, which was a common method of training inmates for new jobs.  *Id*. ¶ 29.  Plaintiff inquired as to the identity of the helper, and Defendant Vereen provided Plaintiff with the helper's identity.  *Id*. ¶¶ 31–32.  Plaintiff alleges that the helper was someone with a "well-known behavioral problem who is vulgar and confrontational."  *Id*. ¶ 32.  Plaintiff "made it very clear that he did not want to be exposed to such a combustible situation[,] [but] Defendant Vereen dismissed [his] concern with finality."  *Id*. ¶ 33.  Plaintiff also "requested to reclass to a lesser position[,]" and Defendant Bennett became "unnecessarily hostile" and threatened to place Plaintiff at the bottom of the list if he reclassed.  *Id*. ¶ 34.  Plaintiff alleges he

"made it clear that he had no other options [and] left the office." *Id*. ¶ 35.

A few moments later, Plaintiff was once again summoned to Defendant Bennett's office where he was presented with a "Classification Status form that contained the substantially misleading narrative that . . . [he] 'decided to quit' his job." *Id*. ¶ 36. Plaintiff refused to sign the document, but Defendant Bennett told Plaintiff it would still be placed in his file. *Id*. ¶ 37. Plaintiff alleges that "Defendant Bennett understands the harm associated with planting narratives of what is considered poor conduct into a prisoner's file." *Id*. Plaintiff alleges that he "immediately responded by engaging the Administrative Remedies procedure, a protected free speech activity[,]" and he wrote "Informal Resolutions" to Defendants Mangiafico, Vereen, and Bennett. *Id*. ¶ 38. Plaintiff claims that Defendants Mangiafico and Vereen were prioritizing him with tier-man jobs because they were not going to allow him to go to the Industry or participate in any programming in which he was interested. *Id*.

Plaintiff avers that Defendants Vereen and Bennett did not respond to the Informal Resolutions, but instead, Defendant Mangiafico instructed Defendant Vereen to respond on her behalf. *Id*. ¶ 39. On the same day Plaintiff received Defendant Vereen's response, he "was informed that he was being sent out of L-1 to what could arguably be the most chaotic block in the prison, H-2." *Id*. ¶ 40. When Plaintiff arrived at H-2, he discovered that he was assigned to "the cell that had just been occupied by the same prisoner who struck him previously after that prisoner was not given an extra tray." *Id*. ¶ 41. That prisoner was then returned to L-1 and provided a single cell. *Id*. ¶ 41. Plaintiff claims to have "learned that Defendant Bennett orchestrated the move and the added insult of humiliating Plaintiff." *Id*. ¶ 42.

Plaintiff then began a hunger-strike because "he knew that the MacDougall C.I. administration was completely aware of what they were doing to him." Plaintiff was subsequently

"provided a modicum of relief after a newly appointed Ombudsman inquired to . . . administration about [him, and he] was moved from H-2 to J-2 and assigned there as a shower worker – the bottom of the t[ie]rman list." *Id*. ¶ 44.

Plaintiff further alleges that it was the culture for prisoners to submit their names to the Industry Supervisors for Industry positions through other workers, so he submitted his name twice, through different workers. *Id*. ¶¶ 45–46. Plaintiff alleges that Defendant Tulloch denied both his requests to be placed in an Industry position, citing Plaintiff's "ongoing suit involving her Cheshire C.I. counterparts" as the reason for the first denial. *Id*. ¶ 47. Plaintiff claims he does not know Defendant Tulloch and he has never interacted with her, but at the same time, he states that he wrote to Defendant Tulloch twice and did not receive a response to either informal request. *Id*. ¶¶ 48–49. Plaintiff subsequently "witnessed two prisoners who arrived at J-2 after [him] get hired." *Id*. ¶ 50.

Plaintiff alleges that "Defendants have acted independently and in concert of each other to achieve denying him meaningful job and programming opportunities that would otherwise acknowledge and reward his consistent respect for authority and obedience to the rules and regulations of the institution." *Id*. ¶ 52. Plaintiff claims that these opportunities "are normally accessible to prisoners who have performed as [he] has for many years." *Id*. Finally, Plaintiff avers that his inability to have access to meaningful job and programming opportunities, "injured his quality of life without just cause and ha[s] continued to injure his institutional record[,] which is needed to impress upon sentence modification courts and commutation boards . . . for dramatic reduction of his life sentence or even release." *Id*. ¶ 53.

Plaintiff brings two causes of action: (1) retaliation in violation of the First Amendment to the U.S. Constitution against Defendants Vereen and Bennett, for moving Plaintiff to the more

chaotic block and at least temporarily into the cell with the inmate who had previously assaulted

him, placing the "false narrative" in Plaintiff's file regarding Plaintiff quitting his tier-man job,

and potentially negatively influencing Plaintiff's chances for commutation of his sentence, after

Plaintiff filed administrative grievances against them; and (2) conspiracy to retaliate against

Defendants Tulloch and Mangiafico, for failing to offer Plaintiff an Industry job and placing

Plaintiff into "combustible" situations.  ECF No. 1 ¶¶ 54–66.  Plaintiff sues all Defendants in their

individual capacity for compensatory and punitive damages.  *Id*. at 25, 10 at ¶ 7. He seeks

injunctive relief against Defendants Vereen, Tulloch, and Mangiafico to prohibit the retaliatory

conduct and restore him to "the status quo ante, including, without limitation, all the rights and

privilege[s] and opportunity[ies] afforded to any prisoner who has committed no such infraction

to cause such deprivation."  *Id*.

## II.    DISCUSSION

### A.  Personal Involvement of Defendants

First, the Court concludes that Plaintiff has adequately alleged the personal involvement of

each of the Defendants in the alleged constitutional violations, for purposes of initial review.

A plaintiff seeking monetary damages must allege facts that establish the personal

involvement of a defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994).  This rule applies to supervisory officials as well.  *Tangreti v. Bachman*,

983 F.3d 609, 620 (2d Cir. 2020).

Viewing the complaint as a whole, Plaintiff pleads allegations that establish each

Defendant's personal involvement in allegedly retaliating against him in violation of his First

Amendment rights.  The Court therefore proceeds to analyze whether Plaintiff has stated plausible

claims for retaliation and conspiracy to retaliate.

B.  First Amendment Retaliation

    *1.  Defendants Vereen and Bennett*

First, Plaintiff alleges that Defendants Vereen and Bennett retaliated against him because

he engaged in speech and conduct protected by the First Amendment.

To state a retaliation claim, Plaintiff must allege facts demonstrating "(1) that the speech

or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff,

and (3) that there was a causal connection between the protected speech and the adverse

action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and

citations omitted).  Because claims of retaliation by prison inmates are easily fabricated, courts

consider such claims with skepticism and require that they be supported by specific facts; thus,

conclusory allegations of retaliatory conduct are not sufficient.  *See Flaherty v. Coughlin*, 713 F.2d

10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

122 (2002).

For purposes of initial review, Plaintiff plausibly pleads the first element of his retaliation

claim against Defendants Vereen and Bennett:  protected conduct and speech.  While not entirely

clear, it appears that Plaintiff is claiming Defendants Vereen and Bennett are retaliating against

him because of his ongoing lawsuit, *Whipper I*, the filing of which is First Amendment protected

activity.  *See* ECF No. 1 ¶¶ 61, 63.  Likewise, Plaintiff claims that Defendants Vereen and Bennet

have retaliated against him for filing administrative grievances concerning their behavior, which

is also protected activity under the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380

(2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support

a retaliation claim).

At this juncture, Plaintiff has also plausibly alleged that Defendants Vereen and Bennett

took adverse action against him, meeting the second element of his claim. "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). "The test is objective, and the plaintiff is not required to show that he was actually deterred." *Id.*

First, Plaintiff claims that Defendants Vereen and Bennett moved him into the more chaotic block and potentially into the cell with an inmate who had previously assaulted him, allegedly because he had filed grievances against them. While a prisoner has no right to a specific housing placement at a correctional facility, it is well established in the Second Circuit that prison officials may not effect a housing or facility transfer in retaliation for the exercise of constitutionally protected rights. *See Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998); *Miller v. Loughren*, 258 F. Supp. 2d 61, 62 (N.D.N.Y. 2003); *Allah v. Poole*, 506 F. Supp. 2d 174, 187 (W.D.N.Y. 2007).

Additionally, Plaintiff alleges that Defendant Bennett placed a false narrative in his file stating that he had quit his job, which Plaintiff alleges could negatively affect sentence modification courts and commutation boards. ECF No. ¶¶ 36–37. These actions qualify as adverse actions, for purposes of initial review. *See Jusino v. Barone*, No. 22CV00490, 2022 WL 1406601, at *2 (D. Conn. May 4, 2022) (allowing first amendment retaliation claims to proceed against Warden on initial review where plaintiff alleged denial of job assignment was based on plaintiff's participation as a witness in a separate lawsuit against the Warden); *see also Stewart v. Ayala*, No. 20-CV-1938 (CSH), 2022 WL 4356467, at *9 (D. Conn. Sept. 20, 2022) (finding filing of a false misbehavior report constituted adverse conduct for First Amendment retaliation claim).

Finally, for purposes of initial review, when considering Plaintiff's allegations collectively, he has plausibly alleged the final element of his claim: causation. To allege causation, a plaintiff

must plead facts plausibly showing that the protected conduct was a *but-for* cause of the adverse action—meaning that the action "would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)); *accord Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order).

Here, Plaintiff's allegations warrant an inference of causation for initial review purposes. With respect to both Defendants Vereen and Bennett, Plaintiff alleges he filed an administrative grievance with respect to their efforts to assign him a "helper" who was "unstable," ECF No. 1 ¶¶ 29, 55, and these Defendants proceeded to move him to the "chaotic" block and to the cell with the person who had previously assaulted Plaintiff, whom both Defendants allegedly favored, and also placed the "false narrative" that Plaintiff had quit his job in his file. *Id.* ¶ 56. Plaintiff alleges that the day after he received Defendant Vereen's response to his administrative grievance, he was transferred. The Court reasonably infers from the complaint that both Defendants Bennett and Vereen were involved in this transfer, as they were both involved in the conversation about placing the helper with Plaintiff. The temporal proximity between the conversation and the allegedly retaliatory events meets the causation requirement, for purposes of initial review.

Thus, Plaintiff may proceed with his retaliation claim in Count One against Defendants Vereen and Bennett.

### 2. *Defendants Tulloch and Mangiafico*

Although Plaintiff has named only Defendants Vereen and Bennett in Count One, the Court construes the First Amendment retaliation claim as being brought against the other two Defendants, Tulloch and Mangiafico, as well. The Court believes this is consistent with affording Plaintiff special solicitude as a *pro se* litigant.

The Court concludes that Plaintiff may proceed with a First Amendment retaliation claim against Defendant Tullouch with respect to the alleged failure to allow Plaintiff to advance to a position as an Industry worker, but not with respect to Defendant Mangiafico.  First, with respect to Defendant Tulloch, Plaintiff alleges that she cited Plaintiff's ongoing *Whipper I* lawsuit as the reason why Plaintiff was not given an Industry position.  This allegation plainly meets each of the requirements for a First Amendment retaliation claim.  With respect to Defendant Mangiafico, Plaintiff has alleged that only Mangiafico instructed Vereen to respond to Plaintiff's informal grievances addressed to Mangiafico, Vereen, and Bennett concerning placement of the "unstable" prison as his helper.  He does not allege that Mangiafico was involved in the decision to transfer him to the more chaotic block the day after he received Vereen's response to the grievance.  Nor does he make anything more than conclusory allegations concerning Defendant Mangiafico's allegedly adverse actions or the potential connection between any of his protected activity and those actions.  That Mangiafico may have "facilitated" the movement of two prisoners who came to MacDougall C.I., *see* ECF No. 1 ¶ 21, does not necessarily mean that Mangiafico retaliated against Plaintiff.

Thus, Plaintiff may proceed with his First Amendment retaliation claim against Defendant Tulloch, but not against Defendant Mangiafico.

C.  Conspiracy to Retaliate

The Court also concludes that Plaintiff's conspiracy to retaliate claim against Defendant Tulloch and Mangiafico is barred by the intracorporate conspiracy doctrine.

To state a claim for conspiracy under Section 1983, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002).  A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romber v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  Allegations can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."  *Storck v. Suffolk Cty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (internal citation omitted); *see also Ciambriello*, 292 F.3d at 325.

Moreover, where all of defendants are members of the same organization, any conspiracy claim is barred by the intracorporate conspiracy doctrine.  *See Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018).  "[E]mployees acting within the scope of their employment are agents of their employer, [and] an employer and its employees are generally considered to be a single actor, rather than multiple conspirators."  *Id.*  And while the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners. *See, e.g., Burrell v. Quiros*, No. 21-CV-393 (KAD), 2021 WL 1239916, at \*6 (D. Conn. Apr. 2, 2021); *Jones v. Wagner*, 20-CV-475 (VAB), 2020 WL 4272002, at \*5 (D. Conn. July 24, 2020); *Edwards v. Annucci*, No. 17-CV-5018 (VB), 2019 WL 1284295, at \*9–10 (S.D.N.Y. Mar. 20, 2019).

There is, however, an exception to the intracorporate conspiracy doctrine—when individuals are "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282–83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted).  But "[a] mere allegation that the defendants had personal bias against the plaintiff . . . is

13

insufficient to satisfy the exception." *Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at \*8 (D. Conn. Apr. 27, 2022); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) ("in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff") (internal citation omitted).    Instead, a plaintiff must suggest facts to plausibly suggest "that each Defendant possessed an independent personal purpose." *Vega*, 610 F. Supp. 2d at 206.  "Conduct meeting the exception must show officers working against, not for departmental interests." *Jordan v. Dep't of Correction*, No. 3:23-CV-855 (VAB), 2023 WL 6541585, at \*12 (D. Conn. Oct. 6, 2023).

Here, the intracorporate conspiracy doctrine applies because all Defendants are correctional employees, and thus, members of the same organization.  And although Plaintiff claims that "Defendants have acted independently and in concert of each other to achieve denying him meaningful job and programming opportunities[,]" this allegation is too vague and conclusory to satisfy the exception to the intracorporate conspiracy doctrine.  Furthermore, although Plaintiff does allege that Defendant Vereen summoned him to Defendant Bennett's office to advise him that he would be getting a "helper" with "well-known behavioral problems,[]" and he claims that Defendant Mangiafico instructed Defendant Vereen to respond to his Informal Resolution requests on her behalf, these allegations are also insufficient to plead a plausible conspiracy claim.  Plaintiff has failed to provide any allegations as to why it would be in the personal interests of Defendants to commit the alleged retaliation.  Nor has Plaintiff pleaded any allegations to show a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.  *See Webb*, 340 F.3d at 110.

Although Plaintiff's allegations may suggest that Defendants acted out of personal bias because Plaintiff filed an earlier lawsuit against other DOC employees and informal resolution requests directed at Defendants, this does not show that Defendants acted out of personal interest outside the scope of their employment. *See Schlosser v. Walker*, No. 3:20-CV-433 (WIG), 2020 WL 7324679, at *4 (D. Conn. Dec. 11, 2020) (dismissing conspiracy claim where plaintiff alleged correctional employee defendants acted in retaliation for plaintiff's repeated reporting of cell phone use as conclusory and solely suggesting personal bias); *Livingston v. Hoffnagle*, No. 9:19-CV-0353 (GLS) (CFH), 2019 WL 7500501, at *17 (N.D.N.Y. Nov. 8, 2019) (allegation that defendants conspired to violate plaintiff's rights in retaliation for repeated requests for protective custody where defendants were acting within the scope of their employment was insufficient to establish defendants acted out of personal interest to meet the exception to the intracorporate conspiracy doctrine), *report and recommendation adopted*, 2020 WL 95431 (N.D.N.Y. Jan. 8, 2020); *Richard v. Leclaire*, No. 9:15-CV-00006, 2017 WL 9511181, at *17–18 (N.D.N.Y. July 10, 2017) (concluding that allegation that defendants conspired to file false disciplinary report and rig hearing so plaintiff would be found guilty in retaliation for not guilty finding at prior hearing failed to meet intracorporate conspiracy doctrine exception), *report and recommendation adopted*, 2017 WL 4349381 (N.D.N.Y. Sept. 29, 2017).

For these reasons, Plaintiff's claim for conspiracy to retaliate is dismissed against all Defendants.

### D.  Official Capacity Claims

Plaintiff states that he is also suing Defendants Vereen, Tulloch, and Mangiafico in their individual capacity for injunctive relief.  Plaintiff cannot seek injunctive relief against Defendants individually, as they have no ability to provide the requested injunctive relief in their individual

capacities.  *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 144 (D. Conn. 2011).   Instead, Plaintiff must seek injunctive relief against Defendants in their official capacity.  Because Plaintiff is a *pro se* litigant, the Court provides liberal construction to Plaintiff's request for relief and construes his request for injunctive relief as an official capacity claim.

At the outset, to the extent Plaintiff is asserting official capacity claims for monetary damages against the state employee Defendants, such claims are dismissed as barred by the Eleventh Amendment.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Plaintiff may, however, proceed for injunctive or declaratory relief against a defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). A claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief."  *See Smith v. Perez*, No. 19-CV-1758, 2020 WL 2307643, at *6 (D. Conn. May 8, 2020).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Here, Plaintiff has sufficiently alleged that he is subject to ongoing First Amendment retaliation, in that he is still being denied placement in an Industry job and that there is a false narrative in his file because of the allegedly retaliatory actions by Defendants Bennett, Vereen, and Tulloch.  Because it not clear which Defendants may provide him with the relief requested, Plaintiff's claims for injunctive relief may proceed against Defendants Vereen, Bennett, and Tulloch in their official capacities for further development of the record. However, the Court does emphasize that it will consider this request for injunctive relief with caution so as not to immerse

itself in the management of state prisons, and that the Court is not suggesting that such relief is appropriate at this stage of the litigation. *See Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2021 WL 3493621, at *16 (D. Conn. Aug. 9, 2021) (allowing plaintiff's official capacity claims for "injunctive relief [as to] the decision to terminate him from his commissary job for retaliatory reasons" to procced on initial review to the extent plaintiff sought reinstatement to a job at the same rate of pay as his prior job).

### III.    ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may **PROCEED** on his First Amendment retaliation claim against Defendants Counselor Supervisor Vereen; Counselor Bennett; and Correctional Enterprise Supervisor Tulloch, in their individual and official capacities.

The Court **DISMISSES** Plaintiff's claims for conspiracy to retaliate against all Defendants in both their individual and official capacities.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)    If Plaintiff wishes to proceed on his First Amendment retaliation claims against Defendants Vereen, Bennett, and Tulloch, in their individual and official capacities, **only**, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **February 20, 2026**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on these Defendants in their individual and official capacities based on Plaintiff's First Amendment retaliation claim **only.**

(2)    Alternatively, if Plaintiff wishes to attempt to replead his claims against Defendant Mangiafico and his claim for conspiracy to retaliate that have been dismissed above without

prejudice, in order to attempt to state a viable claim, he may file an Amended Complaint by **February 20, 2026**.  **An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the original Complaint that this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **February 20, 2026**, the Court will presume that Plaintiff wishes to proceed on the original Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.

Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**SO ORDERED** at Hartford, Connecticut, this 21st day of January, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE